## SHEPPARD v. MORGAN.
### No. 1899.

Court of Appeal of Louisiana. First Circuit.
Nov. 17, 1938.

Leslie A. Fitch, of Baton Rouge, for appellant.

Fred G. Benton, of Baton Rouge, for appellee.

Le BLANC, Judge.

On November 5, 1935, the plaintiff and defendant herein entered into a contract executed in authentic form before a Notary Public, covering the sale of a large number of shares of the capital stock of Suburban Public Service, Inc. The sale was by the plaintiff to the defendant for 3,021 shares of the said stock for the price and sum of $1,430, of which amount the defendant paid the sum of $630 in cash and for the balance of $800 executed his promissory note for that sum payable on or before one year after date and conditioned to bear interest at the rate of eight per cent per annum from date until paid and providing also for attorneys fees in the sum of ten per cent should it become necessary that the same be placed in the hands of an attorney at law for collection by suit or otherwise. As security for the payment of the said note the defendant, the maker thereof, pledged 2,624 shares of the capital stock of Suburban Public Service, Inc., represented by certificate No. 35 issued by him and endorsed for its use as collateral. Also, he pledged 80 shares of the capital stock of the Engineering Syndicate represented by certificate No. 1 issued to him and likewise endorsed by him. The note was duly paraphed by the Notary for identification with the contract itself.

By the terms of the contract the maturity of the note was conditioned upon the successful operation of the Suburban Public Service, Inc., and it was agreed that should that corporation be declared in default of any of its obligations such default would cause the note to become due and exigible. On October 28, 1937, long after its maturity on its face, the plain-

tiff who was still the holder and owner of the said note instituted this suit to recover judgment for the full amount thereof with interest and attorneys fees, and, asserting his vendor's lien on the number of shares of stock which he had sold and the pledge of the number of shares attached thereto as collateral security, and also setting out grounds for a restraining order to prevent defendant from selling and transferring the shares of stock which he had sold him, he prayed for a preliminary injunction to be followed in due course by a judgment making the same permanent, and also for a judgment against the defendant for the full amount of the said note together with interest and attorneys' fees, with recognition of his vendor's lien on the shares of stock sold by him and of pledge on the number of shares attached as collateral security to the said note, and that in due time all of the said stock be sold in order to satisfy the obligation due him thereunder. He further prayed that if the proceeds from the said sale were not sufficient to fully pay and discharge the same that the unpaid balance of the judgment be executory and enforcible against any other property which the defendant may own.

Upon proper affidavit the Court issued a restraining order prohibiting the sale or transfer of the shares of stock sold by the plaintiff to the defendant conditioned upon plaintiff furnishing bond in the sum of $100. The necessary bond was furnished and thereupon the defendant moved to dissolve the temporary restraining order asking for damages in the way of attorneys' fees. This motion was overruled and the restraining order was continued in effect from time to time.

In due course, the defendant filed his answer in which he admitted the executing of the contract of sale and of the note given in connection therewith but denied that he was in any way indebted to the plaintiff as there was a complete failure of consideration for the giving of the note. He averred that with regard to 42 of the shares of stock alleged to have been sold to him, the plaintiff had no right to sell the same as they did not belong to him and he had no interest whatever in them and that whilst the same were endorsed and delivered, plaintiff had no authority whatever to transfer the same as they were certificates issued in the names of other parties without whose authority,

knowledge and consent the said endorsement had been made. With regard to the sale of all of the said stock, defendant alleged that the said note given in connection therewith was without consideration for the reason that after the said sale, plaintiff by a designed plan to wreck the business of the Suburban Public Service, Inc., deliberately began the carrying out of the same by interfering in every conceivable way with defendant's management and control thereof and by deliberately conspiring with other stockholders to surreptitiously regain control for himself, after it had been understood that the very purpose of the sale of his stock in the corporation was to eliminate him altogether from its affairs and management. He sets out in numerous paragraphs numbered from 17 to 39, inclusive, acts done by the plaintiff in order to hamper and embarrass the company and its officers and calculated to result, as in fact they did, in bankrupting the same and completely destroying the value of defendant's interest therein. Assuming then the position of a plaintiff in reconvention, defendant alleged that the interest which he owned in the corporation and which had been entirely destroyed by the plaintiff's harsh and tortious acts as set out by him had a value of $5,000 and that he is entitled to recover judgment against him for that amount. He prays for a judgment declaring the note sued on to be without consideration and that the pledge of the stock given by him to secure the same be vacated and voided and his stock returned to him, and for judgment against the plaintiff on his reconventional demand in the sum of $5,000.

Upon the filing of this answer by the defendant, plaintiff appeared in Court and by written motion asked that the Court strike therefrom all articles from No. 17 to 39, inclusive, on the ground that they contained allegations and averments by which the defendant sought to introduce and inject into a suit in which both parties reside in the same Parish, a reconventional demand on a statement of facts not connected with and germane to the main demand nor incidental thereto, whereas under Article 375 of the Code of Practice it is only when the parties do not reside in the same Parish that this is permissible. Further, it was urged that as the demand in reconvention is exclusively one for the recovery of damages ex delicto alleged to have been caused prior

to December 18, 1936, and the same having been filed only on January 10, 1938, it has become prescribed under the provisions of the Civil Code applicable to a demand for damages, by the prescriptive period of one year. Article 3536. The motion also asked that all of the articles of the answer, from 1 to 39, inclusive, be stricken therefrom on the ground that they are merely alleged tortious acts committed by the plaintiff and even if substantiated they did not constitute violations of any part of the contract for the sale of the stock or of the note sued on, and therefore did not constitute the failure of consideration for the said note which is relied on as a defense to plaintiff's action.

This motion was heard and submitted to the Court and the district judge, assigning written reasons therefor, sustained the same and ordered all of the allegations of the defendant's answer stricken therefrom. The case was then set for trial on the merits and during the trial it developed that it was through inadvertence that the judge had ordered stricken articles from 1 to 17, inclusive, in which there were contained some allegations of defense to the note itself. On his own motion the district judge then amended the judgment and modified the decree by which all of the allegations had been stricken out and reinstated articles No. 1 to No. 17, inclusive. Counsel for defendant objected to this ruling of the Court and declined to offer any testimony in support of the defense presented under those articles. The case was then submitted by Counsel for plaintiff on the merits whereupon the district judge rendered judgment in favor of the plaintiff as prayed for and the defendant appealed.

■ In this Court counsel for appellant complains first of the ruling of the trial judge in correcting his decree on the motion to strike out, the contention being that before doing so he should have directed a new trial as had been requested on the part of the defendant.

It is true that under the provisions of Article 547 of the Code of Practice, the Court can not alter its judgment, once rendered, except to change the phraseology or to correct errors of calculation, and that it may, ex-officio, only direct a new trial in order to revise its judgment. But that provision refers to definitive or final judgments, such as decide all the points in controversy in the case, and which was not the form of judgment or decree the district judge ordered corrected in this case. It was merely a judgment or decree on a motion to strike out the allegations of the answer which was in the nature of an interlocutory judgment. It merely pronounced on a preliminary matter and did not pretend to decide the case on the merits. C.P. Article 538. Such judgment need not have been signed as it is only a definitive or final judgment which the law makes it mandatory for the judge to sign. C.P. Article 546. See, also, Bossier's Heirs v. Hollingsworth & Jackson, 117 La. 221, 41 So. 553, and Trcka v. Bragmans Bluff Lumber Co., Inc., 168 La. 805, 123 So. 332. We find no error therefore in the ruling of the trial judge on this point and proceed to a consideration of the issues raised on the motion to strike out the defendant's reconventional demand and those articles of his answer in regard to his defense of failure of consideration.

■ The pleadings show, and it is not disputed, that both the plaintiff and the defendant are residents of the Parish of East Baton Rouge. The agreement as set out in the plaintiff's petition, the original being annexed thereto and the execution of the note in conformity therewith, are all admitted by the defendant's answer. It is not questioned by anyone that the demand of the plaintiff is on the note which was executed and given under the expressed terms of the contract with which it is identified. Plaintiff's suit therefore is essentially one on a contract. The reconventional demand of the defendant on the other hand grows out of a series of actions complained of and alleged in the answer under which it would be difficult to conceive anything else but an action for damages or one arising out of a tort. As a matter of fact in Article 39 of the answer, in presenting his demand for $5,000 in reconvention, the defendant alleges that it constituted the value of his interest in the corporation which had been entirely destroyed "by virtue of petitioner's tortious acts aforesaid" and that as a result he is entitled and desires "to recover damages of petitioner for that amount." By his own language therefore the defendant has definitely characterized his demand as one in tort.

Article 375 of the Code of Practice provides that in order for the defendant to be entitled to institute a demand in recon-

vention, it is required that his demand, though different from the main demand, be nevertheless necessarily connected with and incidental to it. Certainly a demand for damages such as is presented by the defendant in this case can not be said to be connected with and incidental to the demand made by the plaintiff which is on a promissory note given under the terms of a contract, and as it is only when the parties to the suit reside in different parishes that the defendant may institute a demand in reconvention against the plaintiff for any cause, we do not see on what ground the defendant in this case can hope for a reversal of the trial judge's ruling on that part of the motion to strike out.

■ Much of what has just been said to sustain the motion to strike out the allegations of the answer on which the reconventional demand is predicated might apply to the motion to strike out the same allegations on which the plea of failure of consideration for the note is based. Even were all the facts to be shown from the allegations to be conceded, there still would be presented only a situation showing a series of tortious acts committed by plaintiff calculated to embarrass and hamper the defendant in the successful management of the affairs of the corporation. Nothing could be adduced from these allegations as proof to show a violation of the contract of sale of the stock from the plaintiff to the defendant for part payment of the purchase price of which the note sued on was given.

Defendant's counsel urge in support of their contention that the allegations ordered stricken from the answer affirmatively show that there was a sharp conflict between the plaintiff and the defendant over the ownership, control and management of the corporation and that the very purpose of the contract was to eliminate the plaintiff entirely and enable the defendant to assume control. That thereafter the plaintiff acquired a few shares of stock and began his systematic campaign of harassment and interference, the effect of which, if not the purpose, was to make worthless the value of the stock which had been sold under the contract, and as a consequence there resulted a breach of that contract on the part of the plaintiff, and therefore the note given under the provisions of the contract was without further consideration.

The weakness of the contention made lies in the fact that the contract itself which is attached to and made part of the plaintiff's petition does not contain any provision suggested in the allegations made in the defendant's answer and out of which it is claimed to have been breached. It is a simple contract for the sale of stock from the plaintiff to the defendant for which the defendant paid part cash and gave his note for the balance of the purchase price which note was secured under the law by a vendor's lien on the stock sold, and by further security, under express agreement, by pledge of additional stock as collateral. There is nothing whatever in the contract to suggest that the plaintiff had agreed·to eliminate himself as a stockholder from the corporation nor is there anything to indicate an agreement that the note given in part payment of the purchase price was to be paid from any of the earnings or profits of the corporation. The allegations of the answer do not even intimate any such provisions as forming the nature of the contract and as indicated by the district judge in his written reasons we wonder on what ground oral testimony to support the allegations of the answer as made could have been admitted, since necessarily such testimony would have had the effect of introducing and putting into the contract certain provisions and matters not even contemplated under its terms.

Counsel for defendant contend further that the law necessarily implies that in a contract having for its purpose the sale of stock on credit the stock so sold will be paid for by the purchaser from the future income or earnings of that stock. They cite the case of General Accident, Fire & Life Assurance Corporation v. Ross, 155 La. 545, 99 So. 443, by which they urge the present case is to be governed. But a reading of that case reveals at once that there was an express agreement to the effect that the note sued on, and against which defendant had pled failure of consideration, was to be paid out of the business which had been taken over by the insurance agency organized at the instance of the plaintiff. From the language of the opinion it is seen that the answer under which the plea of failure of consideration was made contained an allegation that there was an understanding that the note sued on was to be paid out of the commissions earned from that business, but that the taking away of that business from the defendant had effectually destroyed all means of paying the note in the manner and from the funds as agreed upon. The

Court said [page 445]: "It can hardly be denied that if it be true that a certain per cent. of the earnings of the Ross Insurance Agency, which was under the control of the plaintiff, was to be set aside to take care of the defendant's note, and the said note was to be paid in that manner, and the plaintiff by its acts placed it beyond the power of the defendant thus to pay the note, there was a failure of consideration of the note." By his allegations in the answer in that suit the defendant had alleged a specific violation of the agreement under which the note had been given and certainly nothing was left to inference or legal implication as counsel contend for in this case. The difference in the situation presented before us appears at a glance when, as already shown, the note sued on arises out of a simple contract for the sale of the stock without any provision regarding the source of the fund from which it was to be paid, and there are no allegations made by the defendant from which a violation of that agreement can even be implied.

In the case of Southern Development Company, Inc., v. Greco, 9 La.App. 710, 121 So. 381, also cited by Counsel, the defendant had pled failure of consideration for the note sued on, but in that case also it appears that the plea was supported by allegations to the effect that there was an agreement between the parties that the maker of the notes sued on would realize sufficient funds from the resale of the properties involved in the agreement with which to pay the notes as they matured. The Court was not called on to pass on a motion to strike out as in this case and decided in passing on the merits that the defendant had not supported his defense that the note had been given with any such limitation. The case can not be said to be authority on the point raised by the defendant here where he has made no allegation whatever that the payment of the note was conditioned upon any specific agreement relating to the earnings or profits to be derived from the stock sold to him by the plaintiff, and where it appears on the other hand that the note sued on is absolute on its face and was given by the defendant without any restrictions whatsoever. Under such circumstances as was said by the Court in the case just referred to a "defense of failure of consideration will not stand."

We have thus disposed of every issue presented by this appeal and feeling convinced of the correctness of the ruling of the trial court on all of them, the judgment appealed from will be affirmed.

For the reasons stated it is therefore ordered that the judgment of the lower court be and the same is hereby affirmed, appellant to pay all costs of appeal.